John F. McLean, Defendant in Error, v. National Press Association, Plaintiff in Error.

Gen. No. 15,202.

CONTRACTS—*who not liable upon.* Where a salesman is employed by a contract which provides that his sales, etc., shall be made in the name of another corporation, such other corporation is not liable for the commissions earned by such salesman.

Attachment. Error to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in this court at the March term, 1909. Reversed. Opinion filed October 6, 1910.

FRED A. BANGS, for plaintiff in error.

F. J. KARASEK, for defendant in error; CHARLES W. ESPEY, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This writ of error is prosecuted by the defendant in the suit to reverse a judgment in favor of the plaintiff McLean based upon a written contract made and executed by and between plaintiff and a third party.

The contract in question was made November 27, 1905, between the Syndicate Publishing Company, a corporation, party of the first part, and John F. McLean, party of the second part. It provides among other things that the Syndicate Company shall furnish the second party a publication called Twentieth Century Encyclopaedia f. o. b. Philadelphia, Pa., or Albany, N. Y., for $8 per set and furnish prospectus, etc., at cost of production; that the Syndicate Company shall advance second party such part of $150 a week as may be necessary until such time as the cash collected on orders taken by second party shall equal $150 a week, not exceeding however $10 an order; that the second party shall devote entire time and sell the publication for not less than $29.50 per set, make settlements promptly the first of each

month for the preceding month's purchases, not draw more than $150 a week from their business, McLean to draw $80; that the second party shall turn over to the Syndicate Company all leases or agreements of sale as soon as delivery of book is made to subscriber, the Syndicate Company to use its best endeavors to collect same and to receive therefor fifteen per cent on the actual amount of cash collected with additional fees if suit should be found necessary; said contracts to be held only as security for obligations of second party to the Syndicate Company and not to be used except for liquidation of such obligations. The first party is to mail monthly statements showing amount of collections for preceding month.

The only reference to defendant in the contract is in the following clause: "It is also mutually understood and agreed that the actual agreements of sale shall be made in the name of the National Press Association, and that the collections to be undertaken by said first party (Syndicate Publishing Company) shall be also made in that name at its office in Philadelphia, and at such time as said National Press Association may have an office in the city of Chicago, the collections may also be made from that point if it should be deemed advisable."

The second party was to begin operations on or before January 1, 1906, and the agreement was to continue in full force and effect until January, 1907. The contract is signed by "Syndicate Publishing Company, B. Mauer, Secretary," and by John F. McLean. E. L. Whittier, who is mentioned in the contract as one of the parties of the second part, did not sign it and seems to have dropped out before the contract was executed.

The plaintiff's bill of particulars filed November 6, 1907, states that plaintiff's claim is upon the foregoing contract; that the plaintiff took orders for said publication under said contract at $29.95 for each order, specifying eighty-one orders, and that there was a balance due him on the face of contracts taken of $957. In an amended statement of claim filed by leave of court November 22, 1907, it is alleged that

the agreements of sale or orders for the sale of the publication referred to in the original bill of particulars "were taken in the name of the National Press Association and the collections to be undertaken for the monthly payments were also taken in the name of the National Press Association; and the plaintiff avers that the agreements of sale and the collections aforesaid were both accepted by the said National Press Association and all work done by the plaintiff was done and accounted for to the National Press Association and by them was accepted, and the said National Press Association received the benefit of the work aforesaid and of the orders for the agreements of sale for the publications aforesaid and the collections undertaken as aforesaid." The suit was originally begun by attachment. Later the defendant filed bond and the garnishee, the Railway Claim Adjusting Company, was by order of court released and discharged.

There is evidence tending to show that the plaintiff took eighty-one orders for the publication referred to, and that he worked under the contract in question until about April 4, 1906. At that date he wrote the Syndicate Publishing Company that "owing to the uncertainty of procuring business" under existing industrial conditions, he did "not feel justified in spending any more money on 'try outs' at this time." There is evidence tending to show that he meanwhile had received under the contract merchandise amounting to $655.55 and $834.92 in cash advanced to him, a total of $1,490.47; that meanwhile the Syndicate Publishing Company had collected according to its books on the orders taken and sales made by plaintiff $1660.49; that deducting from this amount the fifteen per cent commission to which it was entitled under the contract and the amount paid plaintiff, the latter was in debt to the Syndicate Company in the sum of $79.05. There is also evidence tending to show that the merchandise furnished and cash advanced under the contract all came from the Syndicate Publishing Company. The plaintiff's claim against defendant is based upon the clause in the contract between him and the Syndicate Publishing Company, in which it was mutually agreed that the agreement of sale

and the collections to be undertaken by the Syndicate Company should be in the name of the defendant, a separate corporation, and not a party to the contract. It is charged that these agreements of sale or orders for the publication referred to were accepted by the defendant and that it received the benefit of the work and of the orders taken and collections made by it. The clause in the contract referred to states however that it was "the collections to be undertaken by said first party," namely the Syndicate Publishing Company, that were to be made in the defendant's name, thus by mutual agreement between plaintiff and the Syndicate Publishing Company constituting defendant the agent of the Syndicate Publishing Company to make the collections, which by the contract the Syndicate Company was "to use its best endeavors to collect." The plaintiff in taking orders of sale in the defendant's name and the Syndicate Company in turning them over to the defendant as its agent in making the collections, were acting in accordance with the terms of their own written agreement, to which the defendant was not a party. That in accepting the agency for the Syndicate Company at the request of both parties to the contract, the defendant made itself liable to the plaintiff under the contract, is a claim which finds no support in this record; and there is no evidence to which our attention has been called tending to show the defendant "received the benefit of the work aforesaid and of the orders for the agreements of sale for the publication aforesaid and the collections undertaken as aforesaid," as set forth in plaintiff's amended statement of claim. It is said by plaintiff's counsel that "it appeared that the said Syndicate Publishing Company in so signing (the contract) was acting in the matter as a representative of the National Press Association, which had not only availed itself of the benefits of said contract, but had acted upon it and assumed the obligations thereof as though it had expressly made itself a party thereto by signature in due course. The two corporations assumed toward each other the relation of partners and the jury found plaintiff in error liable on the contract." No effort is made to point out evidence tending

to support the contention that the Syndicate Publishing Company signed the contract sued on as a representative of the defendant. It is apparently sought to hold the defendant liable on the alleged ground that the two corporations "assumed toward each other the relation of partners." The contention is not supported by evidence, the absence of which cannot be supplied even by the verdict.

The claim to hold defendant liable under the circumstances on the mere alleged ground that it has "assumed the relation of partner" toward another corporation which is the real contracting party, but not a party to the suit, is not tenable. There is no evidence tending to show that the defendant assumed the contract of the Syndicate Publishing Company or has acted otherwise than as agent of the contracting parties.

The evidence upon which the claim of plaintiff to recover any definite sum of money is apparently based tended to show that in his opinion the plaintiff has not received all he is entitled to out of the money collected by defendant, whether as agent or otherwise. Plaintiff testified that he had no knowledge how much had been collected on his orders for the publication; that "there should be due me now about $8 on each contract taken as recorded here, which would make about $648." The objection that this is a mere statement of opinion or conclusion of the witness is well taken. There is no controversy on any question of law. Plaintiff's counsel states, "We are willing to concede that the propositions of law advanced by the plaintiff in error are entirely valid." We are of opinion the defendant is not liable on the contract upon which the suit is brought. The judgment of the Municipal Court is therefore reversed.

*Reversed.*